IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CARA ELIZABETH ROBERTS,

    Plaintiff,

v.                                           CASE NO. 1:13-cv-44-GRJ

CARLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

_____/

## **ORDER**[1]

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability, disability insurance benefits, and supplemental security income. (Doc. 1.) The Commissioner has answered (Doc. 8), and both parties have filed briefs outlining their respective positions. (Docs. 11 & 12.) For the reasons discussed below, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance and supplemental income benefits on November 10, 2008, alleging a disability onset date of July 10, 2008, due to bipolar disorder, dyslexia, attention deficit disorder, obsessive-compulsive disorder, paranoia, anxiety, Turret's syndrome, schizophrenia, depression, eating disorder, and insomnia. (R. 152-53, 159, 51.) Plaintiff was 21 years old at the

---

[1] The parties have consented to have the undersigned, a United States Magistrate Judge, conduct all proceedings in this case. (Docs. 5, 6.)

alleged disability onset date. (R. 25.)

Plaintiff's applications were denied initially and upon reconsideration. (R. 51-53, 56-57, 62-64, 66-67.) Plaintiff requested a hearing before an administrative law judge (ALJ), who conducted a hearing on March 30, 2011.[2] On May 12, 2011 the ALJ entered an unfavorable decision. (R. 15-17, 18-25.) The Appeals Council denied Plaintiff's request for review on May 27, 2011. (R. 1-4.) This action followed.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[3] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[4]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[5] The district court must view the evidence as a whole,

---

[2] The hearing was commenced on January 19, 2011 but was continued by the ALJ because Plaintiff wanted to have a personal representative present. (R. 44-46.)

[3] See 42 U.S.C. § 405(g) (2000).

[4] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[5] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

taking into account evidence favorable as well as unfavorable to the decision.[6] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[7]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[8] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[9]

The ALJ must follow five steps in evaluating a claim of disability.[10] First, if a claimant is working at a substantial gainful activity, he is not disabled.[11] Second, if a claimant does not have any impairment or combination of impairments which

---

[6] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[7] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[8] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[9] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[10] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[11] 20 C.F.R. § 404.1520(b).

significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[12] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[13] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[14] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[15]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[16] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[17] The Commissioner may satisfy this burden

---

[12] 20 C.F.R. § 404.1520(c).

[13] 20 C.F.R. § 404.1520(d).

[14] 20 C.F.R. § 404.1520(e).

[15] 20 C.F.R. § 404.1520(f).

[16] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.
3d 1274, 1278 (11th Cir. 2001).

[17] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided

by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[18]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[19] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[20]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[21] Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[22] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of

---

for in the statutes or regulations.) (Internal citations omitted).

[18] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[19] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[20] Walker, 826 F.2d at 1003.

[21] Wolfe, 86 F.3d at 1077-78.

[22] See id.

performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

*A.  Medical Records Relating to Mental Impairments*

Plaintiff was admitted to West Florida Hospital in Pensacola, Florida pursuant to the Baker Act on May 6, 2007 for bizarre behavior while at church.  (R. 317.)  Plaintiff said that the devil had taken her over and that she saw bugs crawling out of the wall. *Id*.  Plaintiff said that she had trouble with her anger and rage since she was seven years old, but was getting somewhat better at controlling her anger and rage.  *Id*. Plaintiff also admitted to mild symptoms of dysthymia, but once again felt that she was functioning better with her depression as she was getting older.  *Id*.  Plaintiff's attending physician, Dr. Wilson Edwards, diagnosed her with adjustment and impulsive control disorder, but discharged her because she did not meet Baker Act criteria.  (R. 320.) Plaintiff was advised to do a psychological follow up and to do therapy.  *Id*.

Baker Act proceedings were again initiated on May 10, 2007.  (R. 325.)  Plaintiff was brought to Baptist Hospital in Pensacola by law enforcement for actively fighting with her family, spitting, repetitively counting from one to seven and back, and speaking incoherently, referring to herself as a child of God.  *Id*.  Plaintiff was admitted to the hospital until May 21, 2007, and was given Ativan and Haldol for her agitation.  (R. 326.)  Plaintiff was also started on Risperdal and Cogentin.  (R. 326-27.)  Dr. Venkata Sompalli noted that her status at discharge was improved.  (R. 327.)  Plaintiff received follow up care at Lakeview Center, Inc.  (R. 425-428.)

Plaintiff's was again brought to the hospital by law enforcement on October 20,

2008, within the relevant time period.  (R. 393-94, 390-92, 395-421.)  Plaintiff's family initiated an ex-parte proceeding because Plaintiff had not been taking her medications, and the family feared that she was trying to kill other family members.  (R. 393.)  Upon admission, Plaintiff was "very manic" and unable to give the admitting physician any history.  *Id*.  Lithium and Risperdal for stabilization were prescribed.  (R. 394.)

On November 5, 2008, Plaintiff was evaluated by Dr. Sompalli, who noted no hyperactivity, agitation, aggression, rapid or pressured speech, grandiosity, delusions, or hallucinations.  (R. 391.)  Dr. Sompalli also noted that Plaintiff had a job at Autozone, and another job she was going to pursue if she could not manage her current job.  *Id*.  Dr. Sompalli discharged her that day because he determined that Plaintiff did not meet the criteria for the Baker Act, and she was compliant with her treatment.  *Id*.  Her discharge plan included Risperdal Consta injections, Risperdal orally nightly, Congentin twice a day, and lithium twice a day.  *Id*.

After her hospitalization, Plaintiff continued to receive follow up care at Lakeview Center, Inc.  (R. 422.)  Treatment notes from December 4, 2008 document that there was disagreement between Plaintiff and her mother whether she was completely compliant with her medication.  (R. 423.)  Plaintiff, however, reported that her medications were fairly efficacious.  *Id*.  Dr. Shay Rosecrans noted that Plaintiff was fully oriented and appear[ed] to have the ability to participate in health care decisions."  *Id*.  Plaintiff's discharge medications were continued.  *Id*.

State agency psychologist, Shirley Ellis, Ph.D., completed a psychiatric review technique and mental RFC on January 22, 2009.  (R. 436-49, 450-53.)  In the PRT, Dr.

Ellis opined that Plaintiff had no limitations in activities of daily living; mild limitations in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (R. 446.) In the mental RFC, Dr. Ellis opined that Plaintiff was not significantly limited in the ability to: understand remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; and make simple work-related decisions. (R. 450-51.) Dr. Ellis found that Plaintiff had moderate limitations in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* Dr. Ellis further found that Plaintiff was not significantly limited in the area of social interaction and adaptation. (R. 451.) Dr. Ellis concluded that Plaintiff could perform most basic activities required for employment. (R. 452.)

On July 14, 2009, state agency psychologist James Meyers, Psy.D. completed a PRT and mental RFC of Plaintiff. (R. 461-78.) Dr. Meyers opined that Plaintiff had moderate limitations in her activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace. (R. 471.) Plaintiff had no episodes of decompensation. *Id.*

The mental RFC disclosed that Plaintiff was not significantly limited in the ability to: understand remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from superiors; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  (R. 475-76.)   Dr. Meyers opined that Plaintiff had moderate limitations in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  *Id*.  Dr. Meyers further found that Plaintiff was not significantly limited in the area of adaptation.  (R. 476.)  Dr. Meyers also concluded that Plaintiff was able to meet the basic mental demands of work on a sustained basis despite any limitations.  (R. 477.)

**B.     Hearing Testimony**

Plaintiff was twenty-four years old at the time of the hearing.  (R. 34.) She testified that she had completed some college.  *Id*.  Plaintiff testified that at the time she filed her application for disability, she had been working at First Credit Union of Florida

as a bank teller. (R. 35.) She had been working there for about a year when she was fired in July of 2008 for excessive absences due to her depression. *Id*. She said that she was not going to work every day because she was depressed about two or three times a week. *Id*.

After she was fired from her position as a bank teller, Plaintiff testified that she attempted to do housekeeping work for Dillard's sometime in 2008. *Id*. She testified that she worked there for about three months, but her depression was worsening and she continued to miss work. *Id*. As a result, she was also terminated from her position at Dillard's. *Id*.

Plaintiff testified that she did not attempt to work again until her current job as a cashier at McDonald's, which she began in January of 2010. *Id*. She testified that she worked part time from 6:00 AM to 2:00 PM. *Id*. She said that she was allowed to work full-time hours, but she was officially only part-time. (R. 36-37.) She testified that most days she was able to work eight hours, but that some days her depression kicked in, and when that happened she would not want to go to work in the morning because she felt badly. (R. 37.) She testified that she would have anxiety attacks. *Id*. On the days she stayed home from work, Plaintiff testified that she mostly just slept because she did not feel like getting out of bed. (R. 38.) Plaintiff testified that when she experienced headaches, or if her nerves caused her to get a stomach ache, she knew she was going to get depressed. *Id*. Plaintiff said that she would feel worthless when she was depressed, and she could not concentrate or focus. (R. 39.) Plaintiff testified that her supervisors were upset and frustrated when she did not come into work, but they

always permitted her to come back to work. *Id*. Plaintiff testified that she had a strictly professional relationship with her supervisor at McDonald's. (R. 38.) Plaintiff testified that she earned minimum wage. (R. *37.*)

Plaintiff testified that she was able to live alone, and that she could complete her household chores on a regular basis "most of the time." (R. 39.)

The ALJ asked Plaintiff how many hours a week she thought she averaged at work in 2010, and she estimated about 30 hours a week. (R. 39.) Upon examination of her work history, the ALJ noted that Plaintiff had worked at Red Robin in 2009. (R. 40.) Plaintiff testified that she worked there for two or three months in 2009, and that was her only employment in 2009. *Id*. The ALJ decided not to question the Vocational Expert until he had examined her wages. (R. 39.)

## C. Findings of the ALJ

The ALJ found that Plaintiff met the insured status requirements through September 30, 2012. (R. 20.) He also found that Plaintiff had engaged in substantial gainful activity since January of 2010. *Id*. The ALJ noted that there was a continuous twelve month period after Plaintiff's alleged onset date in which Plaintiff did not work, from July 10, 2008 to December 31, 2009. The ALJ found that Plaintiff's work at Red Robin in 2009 did not amount to substantial gainful activity. *Id*. Thus, the ALJ proceeded with the sequential analysis as to the time period from July 1, 2008 to December 31, 2009.

The ALJ found that the Plaintiff had the severe impairment of bipolar disorder. (R. 21.) The ALJ concluded that the severe impairment did not meet or medically equal

the Commissioner's Listings.  In considering the Plaintiff's mental impairments at step three, the ALJ found that Plaintiff had mild restrictions in activities of daily living and social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation of extended duration.  (R. 21.)

The ALJ found that Plaintiff has the residual functional capacity to perform the full range of unskilled work at all exertional levels.  (R. 22.)  Relying on the Grids, the ALJ found that there are jobs that exist in significant numbers in the national economy that the Plaintiff could perform  (R. 24-25) and, therefore, the Plaintiff is not disabled.

## IV. DISCUSSION

Plaintiff raises two arguments. First, Plaintiff contends that the ALJ erred in concluding that Plaintiff engaged in substantial gainful activity ("SGA") from January 1, 2010.  According to Plaintiff this finding was error because Plaintiff's earnings for 2010 were below the primary amount ($1,000.00) indicative of SGA applicable to the calendar year 2010. Plaintiff alternatively argues that the ALJ's finding that Plaintiff engaged in SGA in 2010 was error because the work constituted a trial work period.

Second, with regard to the period from July 1, 2008 to December 31, 2009 – when Plaintiff did not perform SGA -- Plaintiff argues that the ALJ erred in relying on the Grids, rather than utilizing a VE, to  to determine that Plaintiff can perform work available in the national economy.

### A.     *Plaintiff Has Engaged in Substantial Gainful Activity* Since 2010

Plaintiff had the burden of proving that she was not engaged in substantial gainful activity.  20 C.F.R. § 416.920; *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th

Cir. 1999.) The ALJ found that Plaintiff had engaged in substantial gainful activity since January of 2010, when she began her job as a cashier at McDonald's. (R. 20.) The Plaintiff was given the opportunity by the ALJ to submit evidence that showed the work she performed at McDonald's was not comparable to the work of unimpaired people who worked at McDonald's or who performed similar occupations as their means of livelihood. Plaintiff did not do so and thus failed to meet her burden of proof.

The thresholds above and below which earnings are considered SGA are set forth in the Social Security Program Operations Manual. In this case, it is undisputed that in 2010 Plaintiff averaged earnings of $983.58 per month based upon total annual earnings of $11,803.00. (R. 172-73.) Average monthly earnings of $983.58 is below the earnings threshold in force in 2010 – above which earnings are considered indicative of SGA -- and is above the earnings threshold in force in 2010, below which the Social Security Administration defines work that is clearly not SGA. In 2010 the primary monthly earnings threshold above which work is considered SGA was $1,000. (the "Primary Amount.") *See,* 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2); *Social Security Program Operations Manual System ("POMS")*[23] DI 10501.015*, Tables of SBA Earnings Guidelines and Effective Dates Based on Year of Work Activity,* 2001 WL 1931773. In the same year the earnings threshold below which work is "clearly not SGA" was $720 a month. (the "Secondary Amount.") *See,* POMS DI 10501.025, *Clearly Not SGA*, 2001 WL 1931775; POMS DI 13010.060, *Determining Trial Work*

---

[23] "While the POMS does not have the force of law, it can be persuasive." *Stroup v. Barnhart,* 327 F.3d 1258, 1262 (11th Cir. 2003)

*Period (TWP) Service Months and Evaluating Subsequent Work Activity*, 2001 WL 1932856.

Because Plaintiff's average monthly earnings were more than the Secondary Amount per month, but were less than the Primary Amount per month, the Social Security regulations and applicable Social Security rulings provide that the agency will analyze other pertinent factors of the employee's work to determine if the person is engaged in SGA. 20 C.F.R. §§ 404.1574(a)(3)(ii), 416.974(a)(3)(ii); Social Security Ruling (SSR) 83-33, *Titles II and XVI: Determining Whether Work Is Substantial Gainful Activity*, 1983 WL 31255.  Specifically, the Social Security Administration will consider whether the work is comparable to that of unimpaired people in the community who are doing the same or similar occupations as their means of livelihood (taking into account the time, energy, skill, and responsibility involved in the work.)  20 C.F.R. §§ 404.1574(a)(3)(ii)(A), 416.974(a)(3)(ii)(A).

At the hearing the ALJ asked Plaintiff's representative to submit Plaintiff's W-2 tax forms. (R. 37.)  The ALJ also pointed out to Plaintiff's representative that evidence would be needed to validate the amount of missed work in comparison to her work schedule if Plaintiff's earnings were suggestive of SGA. (R. 38.)  In order to provide Plaintiff with an opportunity to submit additional evidence regarding SGA the ALJ left the record open for 20 days. (R. 41.)  Plaintiff submitted her W-2 forms but did not submit any evidence documenting that she missed work for medical reasons nor did she submit any evidence documenting that the work she performed was not comparable to the work of the other employees at McDonald's.  In particular, although

Plaintiff testified that she missed work, she did not submit any medical evidence that she was restricted in her ability to perform the duties required to perform her job at McDonald's or that she required any accommodation in order to perform her job. Nor did she submit any non-medical evidence, such as leave slips, which documented that she needed to miss work on a regular basis. To the contrary Plaintiff testified that she had a strictly professional relationship with her supervisors at McDonald's (R. 38) – thus, suggesting that she was able to perform her job commensurate with that of the other employees.  In short, Plaintiff did not meet her burden of demonstrating that the time, energy, skill and responsibility involved in her work at McDonald's was not comparable to that of the other employees at McDonald's or was not comparable to the work of unimpaired people in the community who are doing the same or similar occupations as their means of livelihood.  Accordingly, for these reasons, the Court has no problem concluding that the ALJ did not err in finding that Plaintiff's work at McDonald's, beginning in January 2010, constituted SGA.

In further support of her argument that her work at McDonald's does not constitute SGA Plaintiff contends that her work in 2010 constitutes a trial work period or an extended period of eligibility. Plaintiff's argument fails because her work cannot constitute a trial work period or an extended period of eligibility because Plaintiff was never adjudicated entitled to disability benefits.

A  trial work period evaluation only applies *after* a person becomes eligible for disability benefits.  20 C.F.R. § 404.1592.  The trial work period begins with the month in which an individual becomes entitled to disability benefits. 20 C.F.R. § 404.1592(e).

Because Plaintiff was never adjudicated eligible for disability benefits the issue of whether work constitutes a trial work period was never triggered.

Further, with regard to an extended period of eligibility, because by definition an extended period of eligibility begins in the month after the trial work period ends – and Plaintiff was not entitled to a trial work period – Plaintiff's argument that she is entitled to an extended period of eligibility also fails. *See,* 20 C.F.R. § 404.1592a.

**B.     The ALJ Properly Relied on the Grids**

The Plaintiff asserts that the ALJ erred by using the Medial Vocational Guidelines (the "grids") to determine that Plaintiff was not disabled by finding that her non-exertional limitations had little or no effect on the occupational base.

There are two avenues by which the ALJ may determine whether the Plaintiff has the ability to work in the national economy: either by using the grids or by testimony from a vocational expert. Phillips v Barnhart, 357 F. 3d 1232, 1239-40 (11th Cir. 2004). An ALJ cannot rely exclusively on the grids when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that "significantly limit [her] basic work skills." Id. at 1242. "Significantly limit basic work skills" means that the limitations prohibit a plaintiff from performing a "wide range" of work at a given level. Id. at 1243.

If Plaintiff cannot perform a full range of work at a given level or has non-exertional impairments that prohibit a wide range of work at a given level, the ALJ may use the grids as a framework, but must also introduce independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national

economy that Plaintiff can perform. [24]

On the other hand, where as here, the non-exertional limitations are not severe enough to prevent a wide range of gainful employment at the designated level, it is appropriate to rely upon the grids. Syrock v. Heckler, 764 F. 2d 834, 836 (11th Cir. 1985); Walker v. Bowen, 826 F. 2d 996, 1002-03 (11th Cir. 1987); Welch v. Bowen, 854 F. 2d 436, 439 (11th Cir. 1988); Harris v. Astrue, 2008 WL 728373 (M.D. Fla., Mar. 17, 2008) (affirming ALJ's exclusive reliance on the Grids where claimant had moderate mental impairments but ALJ did not find a substantial loss of ability to perform basic mental work-related activities associated with unskilled work); *see also* Dechant v. Astrue, No. 1:10-cv-72-MP-GRJ, 2011 WL 4089415, at *6-7 (N.D. Fla. Aug. 5, 2011), *report and recommendation adopted* 2011 WL 4103018 (Sept. 14, 2011)(finding reliance on Grids was proper because "although plaintiff had moderate mental impairments, substantial evidence existed in the record to support the ALJ's finding that plaintiff" could perform unskilled work).

The ALJ found that Plaintiff could perform work at all exertional levels. (R. 22.) The ALJ specifically found that Plaintiff has been able to perform simple and unskilled work since her alleged onset date. Id. "Unskilled work" is defined in 20 C.F.R. § 404.1568(a) and § 416.968(a) as work "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." Id. The regulations further provide that administrative notice is taken that a number of unskilled jobs exist in the national economy. 20 C.F.R. § 404.1566(d). A limitation "to simple tasks is already

---

[24] Wolfe v Chater, 86 F. 3d 1072, 1077-78 (11th Cir. 1996).

contained within the unskilled limitation, and is not a limitation above and beyond that classification." <u>Vuxta v Commissioner of Social Security</u>, 194 Fed. App'x. 874, 878 (11th Cir. 2006).[25] Therefore, contained within the grids is the limitation to perform simple tasks in the unskilled work category.

The ALJ found that while Plaintiff's ability to perform work at all exertional levels was compromised by her nonexertional limitation, her limitation had little or no effect on the occupational base of unskilled work. Therefore, because Plaintiff's mental limitation did not effect her ability to perform work at all exertional levels there was no effect on the occupational base and thus the ALJ was permitted to rely upon the grids.

The ALJ's finding that Plaintiff can perform unskilled work is supported by substantial evidence. The medical evidence as a whole suggests that Plaintiff suffers from only moderate impairments in concentration, persistence, and pace. Notably, both consultative examiners, Dr. Ellis and Dr. Meyers, concluded that Plaintiff could perform most basic activities required for employment. (R. 452, 477.)

Moreover, despite these moderate impairments, Plaintiff has maintained a variety of activities of daily living, including taking care of her personal hygiene, preparing simple meals using the microwave, and household chores, as she lives alone. (R. 237, 211, 39.) The ALJ also noted and relied upon the fact that Plaintiff testified that she works about 30 hours per work at McDonald's, and has done so since 2010. (R. 36-37.)

---

[25] Unpublished opinions may be cited as persuasive authority pursuant to Eleventh Circuit Rules. 11th Cir. R. 36-2.

In sum, because the Plaintiff was able to perform the full range of exertional work at all residual levels, and her nonexertional limitation did not significantly limit her basic work skills for unskilled work, the ALJ did not need testimony from a vocational expert and thus the ALJ did not err by relying upon the grids.

## V. CONCLUSION

For the above reasons, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**.  The Clerk is directed to enter final judgment and close the file.

**DONE AND ORDERED** this 24th day of March 2014.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge